**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CITIMORTGAGE, INC.,                )            | |
|                                                )            | |
|           Plaintiff,                           )            | |
|                                                )            | |
| v.                                             )            | |
|                                                )            | |
| NL, INC. f/k/a NAJARIAN LOANS, INC.,           )            | |
|                                                )            | |
| Serve c/o:                                     )            | Case No. _____ |
| Tracey Hirt, Registered Agent                  )            | |
| 2175 North California Boulevard, #1000         )            | |
| Walnut Creek, California 94596                 )            | |
|                                                )            | |
| and RPM MORTGAGE, INC.,                        )            | |
|                                                )            | |
| Serve c/o:                                     )            | |
| Erwin R. Hirt, Registered Agent                )            | |
| 2175 North California Boulevard, #1000         )            | |
| Walnut Creek, California 94596                 )            | |
|                                                )            | |
|           Defendant.                           )            | |

**COMPLAINT**

Plaintiff, CitiMortgage, Inc. ("CMI"), states as follows for its complaint against defendants, NL, Inc. ("NL") and RPM Mortgage, Inc. ("RPM") (collectively, "Defendants"):

**STATEMENT OF THE CASE**

1. At all times relevant to this complaint, CMI was in the business of, among other things, purchasing, reselling, and servicing residential mortgage loans on the secondary mortgage market. Defendants were engaged in the business of originating, sourcing, and/or reselling residential mortgage loans.

2. Defendants have sold loans to CMI at least since 2000. At various times relevant to this complaint, and as described in more detail below, the relationship between Defendants

and CMI is and was governed by various contracts, including a contract entitled "Correspondent Agreement Form 200" dated as of September 28, 2005, between CMI and NL, Inc. (the "NL Agreement").

3. In addition, defendant RPM Mortgage, Inc. ("RPM") entered into a Correspondent Agreement Form 200 with CMI on February 2, 2009 (the "RPM Agreement").

4. Since August 24, 2000, Defendants sold at least six (6) loans to CMI that did not meet – or as to which Defendants did not meet – various requirements under the NL Agreement. These unmet requirements include, but are not necessarily limited to, delivering a loan: (a) that was underwritten and/or originated based upon materially inaccurate information or on material misrepresentations made by the borrower, Defendant, Defendant's directors, officers, employees, agents, independent contractors, and/or affiliates; (b) for which CMI has discovered discrepancies regarding property ownership, income representations, prior undisclosed mortgages or other debts, and occupancy; (c) for which applicable Fannie Mae, Freddie Mac, FHA, VA and/or HUD requirements and industry standards were not followed; and/or (d) that has turned out to be otherwise defective or not in compliance with the Agreement and/or the CMI Manual incorporated into the Agreement.

5. CMI gave notice of noncompliance to Defendants and demanded that Defendants meet the requirements contained in the NL Agreement. Despite these notices and demands, Defendants failed to cure the defects in the specified loans.

6. The NL Agreement provides CMI with the unilateral right to demand that Defendants repurchase these loans. Because Defendants have now failed to cure these defects and comply with their repurchase obligations, they are in breach of the NL Agreement.

7. Defendants now owe CMI in excess of $1,200,000.00 in damages as a result of these breaches of the NL Agreement. CMI brings this action to recover those damages as well as its attorneys' fees, interest, and any further actual and consequential damages resulting from Defendants' breaches of the NL Agreement.

## PARTIES

8. CMI is a New York corporation having its principal place of business in O'Fallon, Missouri.

9. NL, Inc., is a California corporation having its principal place of business in Walnut Creek, California.

10. RPM Mortgage, Inc., is a California corporation having its principal place of business in Walnut Creek, California.

## JURISDICTION AND VENUE

11. Section 12 of the NL Agreement provides in relevant part that, "CMI and [NL] agree that any action, suit or proceeding to enforce or defend any right or obligation under this Agreement or otherwise arising out of either party's performance under this Agreement shall be brought in … the United States District Court for the Eastern District of Missouri and each party irrevocably submits to the jurisdiction of [that] forum . . .."

12. Section 12 of the RPM Agreement provides in relevant part that, "CMI and [RPM] agree that any action, suit or proceeding to enforce or defend any right or obligation under this Agreement or otherwise arising out of either party's performance under this Agreement shall be brought in … the United States District Court for the Eastern District of Missouri and each party irrevocably submits to the jurisdiction of [that] forum . . .."

13.     This Court has diversity subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because CMI and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14.     This Court has jurisdiction over NL because NL has irrevocably submitted to that jurisdiction in the NL Agreement.  This Court also has general jurisdiction over NL because NL transacted business in the State of Missouri by, among other things, selling and delivering loans to CMI within this judicial district.

15.     This Court has jurisdiction over RPM because RPM has irrevocably submitted to that jurisdiction in the RPM Agreement.  This Court also has general jurisdiction over RPM because RPM transacted business in the State of Missouri by, among other things, selling and delivering loans to CMI within this judicial district.

16.     In addition, as described in more detail below, this Court has jurisdiction over RPM pursuant to the Missouri long-arm statute, Mo. Rev. Stat. § 506.500, because CMI's claims against RPM arise out of Defendants' transaction of business within Missouri and both the NL Agreement and the RPM Agreement were made in Missouri.

17.     Venue is proper in this Court because the parties consented to this venue in the NL Agreement and the RPM Agreement.  Venue in this Court is also proper pursuant to 28 U.S.C. § 1391(a) and (c) in that this is the judicial district in which a substantial part of the events giving rise to the claim occurred and, for purposes of venue, Defendants are deemed to reside in this judicial district.

**STATEMENT OF FACTS**

1. **Background**

    18.   Between 2000 and 2009, both NL and RPM have entered into numerous agreements with CMI relating to the purchase and sale of residential mortgage loans.

    19.   Among other agreements, on September 28, 2005, NL, Inc., entered into a Correspondent Agreement Form 200 with CMI (the "NL Agreement"). A true and correct copy of the Agreement is attached to this Complaint as Exhibit 1.

    20.   On February 2, 2009, RPM Mortgage, Inc., entered into a Correspondent Agreement Form 200 with CMI (the "RPM Agreement"). A true and correct copy of the RPM Agreement is attached to this Complaint as Exhibit 2.

2. **RPM Mortgage is the Alter Ego of NL, Inc.**

    21.   On information and belief, the CEO of both NL and RPM is Robert Hirt.

    22.   On information and belief, the President of both NL and RPM is Tracey Hirt.

    23.   On information and belief, Robert and Tracey Hirt own 100% of the shares of both NL and RPM.

    24.   On information and belief, Robert and Tracey Hirt effectively had and exercised total domination and control over the operations of both NL and RPM.

    25.   RPM was incorporated as a California corporation on or about June 19, 2007, and began doing business on or about August 15, 2007.

    26.   RPM was a wholly-owned subsidiary of NL until August 1, 2008, at which time NL sold 100% of RPM's shares to private investors.

    27.   During most of 2008, NL and RPM formed a "co-borrower relationship" on the warehouse lines of credit that NL and RPM used to finance the issuance of residential mortgage

loans, but by December 31, 2008, RPM became the sole party on one of these warehouse lines of credit.

28. RPM sought approval from CMI to sell residential mortgage loans to CMI and asked for an "expedited approval" due to the fact that it was the same company as NL.

29. When asked about the company change, RPM claimed that NL was a "1099 employer" and that it needed to convert to a "W-2 employer" to originate FHA loans.

30. During this approval process, RPM also stated that it needed to "recapitalize."

31. RPM signed the RPM Agreement on February 2, 2009.

32. In 2009, when NL refused to repurchase the defective loans at issue in this case, representatives of NL and RPM told CMI that NL was "effectively insolvent."

**3.     Defendants' Breaches of the NL Agreement**

33. Section 12 of the NL Agreement provides that "[t]his Agreement shall be governed by the laws of the State of Missouri and applicable federal law."

34. Section 1 of the NL Agreement provides that "[f]rom time to time, [NL] may sell to CMI and CMI may purchase from [NL] one or more residential mortgage, home equity, or other loans" in accordance with the terms and conditions in the CMI Manual.

35. Section 1 of the NL Agreement provides that in connection with the sale of loans, NL will deliver loan documentation to CMI in accordance with the terms and conditions of the CMI manual, that CMI may or may not conduct a complete review of the loan documents at issue, and that CMI's review or failure to review loan documents does not affect CMI's rights to demand repurchase of defective loans or any other rights or remedies under the NL Agreement.

36. In Section 2(g) of the NL Agreement, NL agreed to promptly obtain and review the CMI Manual and to comply with all of its terms, conditions, requirements, and procedures.

37. In Section 10 of the NL Agreement, NL agreed to "indemnify and hold CMI harmless from any and all claims, actions and costs, including reasonable attorneys' fees and costs, arising from (i) [NL's] performance or failure to perform under the terms, conditions or obligations of this Agreement or the CMI Manual (including but not limited to [NL's] failure to timely deliver all documents and records associated with or related to all Loans purchased by CMI pursuant to this Agreement), [or] (ii) any fraud, misrepresentation or breach of any representation, warranty or covenant contained [in] this Agreement or the CMI Manual . . .."

38. Section 11 of the NL Agreement provides, in relevant part:

If CMI, in its sole and exclusive discretion, determines any Loan purchased pursuant to this Agreement:

(i) was underwritten and/or originated in violation of any term, condition, requirement or procedure of this Agreement or the CMI Manual in effect as of the date CMI purchased such Loan;

(ii) was underwritten and/or originated based on any materially inaccurate information or material misrepresentation made by the Loan borrower(s), [NL], [NL's] directors, officers, employees, agents, independent contractors and/or affiliates or any other party providing information relating to said Loan;
. . .
(iv) must be repurchased from any secondary market investor (including but not limited to the Fannie Mae, Freddie Mac, FHA, VA, HUD or Government National Mortgage Association) due to a breach by [NL] of any representation, warranty or covenant contained in this Agreement or the CMI Manual or a failure by [NL] to comply in all material respects with the applicable CMI Manual terms, conditions, requirements and procedures; and/or
. . .

[NL] will, upon notification by CMI, correct or cure such defect within the time prescribed by CMI to the full and complete satisfaction of CMI.  If, after receiving such notice from CMI, [NL] is unable to correct or cure such defect within the prescribed time, [NL] shall, at CMI's sole discretion, either (i) repurchase such defective Loan from CMI at the price required by CMI ("Repurchase Price"), or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Loan purchase price) as CMI may deem appropriate.

39. Thus, Section 11 of the NL Agreement gives CMI the sole discretion to determine whether a loan meets these qualifications and the sole discretion to determine whether to demand repurchase of a given loan for failure to meet these qualifications.

40. The "representations and warranties" in Section 2 of the NL Agreement were material inducements for CMI to enter into the NL Agreement and to purchase the loan at issue. Defendants' failure to honor those representations and warranties constitutes a material breach of the NL Agreement.

41. NL sold CMI at least six (6) loans (a) that were underwritten and/or originated based upon materially inaccurate information or on material misrepresentations made by the borrower, NL, NL's directors, officers, employees, agents, independent contractors, and/or affiliates; (b) for which CMI has discovered discrepancies regarding property ownership, income representations, prior undisclosed mortgages or other debts, and occupancy; (c) for which applicable Fannie Mae, Freddie Mac, FHA, VA and/or HUD requirements and industry standards were not followed; and/or (d) that has turned out to be otherwise defective or not in compliance with the NL Agreement and/or the CMI Manual incorporated into the Agreement.

42. CMI sent notice of these defects and demands to cure to Defendants for these loans.

43. Defendants did not cure the defects in these loans.

44. As a result, Defendants are required to indemnify CMI for the entire amount of these loans.

45. Defendants' breaches of the NL Agreement have resulted in total amounts due to CMI in excess of $1,200,000.00, excluding interest, attorneys' fees, costs, and other expenses Defendants owe CMI.

## **COUNT I: BREACH OF CONTRACT AGAINST DEFENDANT NL, INC.**

46.     CMI hereby incorporates its allegations in paragraphs 1 through 45 of this complaint as if they were set forth fully herein.

47.     As set forth in greater detail in paragraphs 12 through 45 above, NL breached the NL Agreement when it delivered loans that failed to conform to the terms of the NL Agreement and subsequently refused to cure those nonconforming loans or repurchase those loans.

48.     On June 4, 2009, and July 22, 2009, CMI demanded the repurchase of Bouchard Loan #XXXXX3119, because NL breached the NL Agreement in several respects, including, but not limited to:  (i) the loan was originated and/or underwritten based on a material misrepresentation of income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

49.     On September 9, 2009, and October 15, 2009, CMI demanded the repurchase of Garigen Loan #XXXXXX9649, because NL breached the NL Agreement in several respects, including, but not limited to: (i) the loan was originated and/or underwritten based on a material misrepresentation of income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

50.     On March 9, 2009, and April 20, 2009, CMI demanded the repurchase of Moseley Loan #XXXXXX7546, because NL breached the NL Agreement in several respects, including, but not limited to: (i) the loan was originated and/or underwritten based on a material misrepresentation of income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

51.     On February 24, 2009, and July 22, 2009, CMI demanded the repurchase of Rivera Loan #XXXXXX5276, because NL breached the NL Agreement in several respects, including, but not limited to: (i) the loan was originated and/or underwritten based on a material misrepresentation of income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

52. On September 14, 2009, and October 15, 2009, CMI demanded the repurchase of Spiker Loan #XXXXXX5541, because NL breached the NL Agreement in several respects, including, but not limited to: (i) the loan was originated and/or underwritten based on a material misrepresentation of income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

53. On July 27, 2009, and October 1, 2009, CMI demanded the repurchase of Strauss Loan #XXXXXX1747, because NL breached the NL Agreement in several respects, including, but not limited to: (i) the loan was originated and/or underwritten based on a material misrepresentation of income; and (ii) the debt-to-income ratio exceeded applicable guidelines.

54. NL failed to cure the defects identified with respect to these loans in response to CMI's demands and failed to repurchase these loans pursuant to CMI's demands.

55. As a result of NL's breaches of the NL Agreement, CMI has been damaged in excess of $1,200,000.00, the exact total amount of which actual and consequential damages CMI will prove at trial.

56. All conditions precedent, concurrent, or subsequent to CMI's rights and ability to bring this claim have taken place, have otherwise been met, have been waived, or have otherwise been excused.

### COUNT II: ALTER EGO LIABILITY FOR BREACH OF CONTRACT AGAINST DEFENDANT RPM MORTGAGE, INC.

57. CMI hereby incorporates its allegations in paragraphs 1 through 56 of this complaint as if they were set forth fully herein.

58. As described in paragraphs 12 through 56 above, NL breached the NL Agreement by delivering loans that failed to comply with the terms and conditions of the NL Agreement.

59. The interrelationship between NL and RPM was effectively manipulated so that NL could avoid its liability to CMI and its other creditors.

60. RPM is the alter ego of NL and is responsible for its debts.

61. Equity demands that RPM be held liable for NL's breach of the NL Agreement because of this manipulation of the interrelationship between the two companies to evade NL's creditors, including CMI.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff CitiMortgage, Inc., asks that this Court enter judgment in its favor and against Defendants, NL, Inc. and RPM Mortgage, Inc., for damages in an amount to be proven at trial, its costs and attorneys' fees in prosecuting this action, pre-judgment interest through the date of judgment, post-judgment interest as provided by law, an order requiring Defendant to perform its obligations under the NL Agreement, including, but not limited to, repurchase of defective loans, and such other and further relief as this Court deems just and proper.

Dated: December 23, 2009                                **BRYAN CAVE LLP**

By:   *//s// Louis F. Bonacorsi*
      Louis F. Bonacorsi, #2668
      lfbonacorsi@bryancave.com
      James M. Weiss, #516553
      james.weiss@bryancave.com
      211 North Broadway, Suite 3600
      St. Louis, MO 63102
      (314) 259-2000
      (314) 259-2020 (facsimile)

Attorneys for Plaintiff CitiMortgage, Inc.