UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITIMORTGAGE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:09CV2104 FRB |
| ) | |
| NL, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Presently pending before the Court is defendant RPM Mortgage, Inc.'s Motion to Dismiss, or, in the Alternative, for a More Definite Statement (Doc. #17).  All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff CitiMortgage, Inc. (CMI), brings this breach of contract action alleging that defendant NL, Inc. (NL), failed to comply with the terms of an Agreement entered into between CMI and NL, by selling to CMI defective residential mortgage loans and by failing to cure the defects in said loans upon notice thereof. Plaintiff CMI contends that defendant NL failed to repurchase these defective loans, as provided in the Agreement, resulting in damage to CMI in an amount exceeding $1.2 million dollars.  In its Complaint, plaintiff also alleges that defendant RPM Mortgage, Inc. (RPM), is the alter ego of defendant NL and should therefore be held liable for NL's breach of the Agreement with CMI.

Defendant RPM now moves to dismiss plaintiff's Complaint against it, arguing that the Complaint fails to state a claim upon which relief can be granted inasmuch as plaintiff fails to sufficiently plead the elements to establish alter ego liability and, further, bases its Complaint against RPM only upon conclusory and speculative allegations. In the alternative, defendant RPM requests a more definite statement, arguing that the allegations against it in the Complaint are so vague and ambiguous that it is unable to prepare a response thereto. Plaintiff has responded to the motion, to which defendant RPM has replied.

## I. Background

In its Complaint, plaintiff CMI alleges that it entered into a relationship with defendant NL in 2000 whereby NL sold residential mortgage loans to CMI. CMI and NL entered into a written Correspondent Loan Purchase Agreement—Form 200 ("the NL Agreement") in September 2005 which governed the terms of their relationship. In its Complaint, CMI alleges that at least six loans sold by NL to CMI did not meet the terms of the NL Agreement. CMI gave notice to NL of noncompliance regarding these six loans, but NL failed to cure the loans' defects. Nor did NL repurchase the defective loans, contrary to the terms of the NL Agreement. CMI claims that NL's breach of the NL Agreement, by its failure to cure the defective loans and failure to repurchase the loans, has resulted in damage to CMI in excess of 1.2 million dollars.

Plaintiff CMI also alleges that defendant RPM is the alter ego of NL and therefore is liable to CMI for NL's breach of the Agreement. With respect to RPM's alter ego status, plaintiff alleges as follows: RPM was incorporated in June 2007 and began doing business in August 2007. RPM was a wholly owned subsidiary of NL until August 2008, at which time RPM was sold to private investors. Individuals Robert Hirt and Tracey Hirt are the CEO and President, respectively, of both NL and RPM and own 100 percent of the shares of both NL and RPM. In 2008, NL and RPM formed a "co-borrower" relationship on warehouse lines of credit that NL and RPM used to finance residential mortgage loans. By December 2008, RPM became the sole borrower on one line of credit.

RPM sought approval from CMI to sell residential mortgage loans to CMI and asked for expedited approval, representing to CMI that it was the same company as NL. When CMI asked RPM about the company change, RPM represented to CMI that NL was a "1099 employer" and that it needed to convert to a "W-2 employer" to originate FHA loans. RPM also represented to CMI that it needed to recapitalize. On February 2, 2009, CMI and RPM entered into a written Correspondent Loan Purchase Agreement—Form 200 ("the RPM Agreement"). Robert Hirt executed both the NL Agreement in September 2005 and the RPM Agreement in February 2009.

Beginning on February 24, 2009, and continuing thereafter, CMI demanded that NL repurchase six loans which were

defective under the terms of the NL Agreement. When NL refused to repurchase the defective loans, NL and RPM representatives advised CMI that NL was "effectively insolvent."

CMI alleges in its Complaint that NL and RPM manipulated their interrelationship so that NL could effectively avoid its liability to CMI and other creditors. CMI claims that because RPM is the alter ego of NL, created for the purpose of evading NL's creditors, RPM should be held liable to CMI for its losses caused by NL's breach of contract.

## II. Discussion

When reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations contained in the Complaint, and review the Complaint to determine whether its allegations show the pleader to be entitled to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007); Fed. R. Civ. P. 8(a)(2). The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the Complaint. A Complaint must be dismissed under Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974 (abrogating the traditional 12(b)(6) "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). While the Complaint need not provide specific facts in support of the claims contained therein, Erickson v. Pardus, 551

U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam), it "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 127 S. Ct. at 1964-65 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965. When determining a motion to dismiss under Rule 12(b)(6), "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Defendant RPM contends that plaintiff's Complaint fails to state a claim against it inasmuch as plaintiff fails to sufficiently plead the elements to establish alter ego liability under Missouri law and, further, bases its claims only upon conclusory and speculative allegations. For the following reasons, defendant RPM's argument fails.

Under Missouri law, two separate corporations are to be generally regarded as wholly distinct legal entities, even though the stock of one may be owned partly or entirely by the other. Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc., 737 S.W.2d 206, 218 (Mo. Ct. App. 1987). The mere fact of common ownership and control does not itself demonstrate alter ego status such that piercing of

the corporate veil is authorized. Id. However, "[a] finding that two businesses are alter egos is proper if based on 'substantial identity in terms of corporate ownership, management, business purpose, operation, equipment, customers, and supervision.'" Greater Kansas City Laborers Pension Fund v. Thummel, 738 F.2d 926, 929 (8th Cir. 1984) (quoting NLRB v. Campbell-Harris Elec., Inc., 719 F.2d 292, 295 (8th Cir. 1983)). When determining whether to pierce the corporate veil based on alter ego status, "[t]he question is whether the corporations are being manipulated through their interrelationship to cause illegality, fraud, or injustice." Terre Du Lac Ass'n, 737 S.W.2d at 218.

In order to pierce the corporate veil, a plaintiff must meet a two-part test. First, plaintiff must demonstrate that the corporation was controlled and influenced by persons or another corporation; and second, evidence must establish that the corporate cloak was used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetuate a fraud. Terre Du Lac Ass'n, 737 S.W.2d at 218; see also Saidawi v. Giovanni's Little Place, Inc., 987 S.W.2d 501, 505 (Mo. Ct. App. 1999); Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp., 885 S.W.2d 771, 773-74 (Mo. Ct. App. 1994). "One badge of fraud is the transfer by the debtor corporation of its property to a second corporation when both are controlled by the same person." Edward D. Gevers Heating, 885 S.W.2d at 773. In addition, "the wrong done [must] be the

proximate cause of injury to third persons who dealt with the corporation." Id. at 774.

Against this backdrop, it cannot be said that plaintiff CMI's Complaint fails to state a claim against defendant RPM for its alleged alter ego status to NL. Contrary to RPM's assertion, plaintiff articulates sufficient factual information giving rise to its claim that RPM is the alter ego of NL, such that RPM may be liable to plaintiff for NL's alleged breach of contract. Plaintiff alleges that the principals and sole owners of NL opened and set up RPM to engage in the same line of business as NL, that is, originating and selling residential mortgage loans; that NL and RPM used the same lines of credit in such business; that after a year of becoming established in the same business as NL, RPM requested that it be permitted to sell loans to CMI in the same manner as NL; that RPM represented to CMI that it was the same business as NL but only changed the name due to its employer status; and that shortly after RPM entered into the Correspondent Loan Purchase Agreement with CMI, NL failed to meet its obligations to CMI under its Agreement, informing CMI that it was "essentially insolvent." Plaintiff alleges that NL and RPM manipulated its interrelationship in such a way so that NL was able to thwart its creditors due to its "insolvency" but yet continue its business as developed through the alter ego corporation, RPM.

At this stage of the proceedings, plaintiff's Complaint

states factual allegations sufficient to support its claim for relief against RPM and inform RPM of the nature of its action. As set out above, CMI has pleaded facts to support the essential elements of its claim that NL and RPM used its interrelated corporations in a manner so as to avoid NL's debts and obligations to CMI. The Complaint is not a wholly unsupported conclusory statement that RPM is the alter ego of NL. See generally Saidawi, 987 S.W.2d at 504-05; Edward G. Gevers Heating, 885 S.W.2d at 773-75; Terre Du Lac Ass'n, 737 S.W.2d at 218-19. Because the Complaint gives defendant RPM fair notice of plaintiff's claim, the grounds upon which it rests, and provides a sufficient factual basis for such grounds, defendant RPM's motion to dismiss for failure to state a claim should be denied. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008).

To the extent defendant RPM seeks a more definite statement from plaintiff, the undersigned notes that motions for more definite statement are generally disfavored and are designed to serve as a means to remedy unintelligible pleadings. Young v. Warner-Jenkinson Co., Inc., 170 F.R.D. 164, 165-66 (E.D. Mo. 1996). They are not designed to remedy alleged lack of detail. Id. A review of plaintiff's Complaint here shows it not to be unintelligible, nor so vague or ambiguous such that defendant RPM cannot reasonably frame a responsive pleading to the claims raised therein. Fed. R. Civ. P. 12(e). Defendant RPM's alternative

motion for more definite statement should be denied.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant RPM Mortgage, Inc.'s Motion to Dismiss, or, in the Alternative, for a More Definite Statement (Doc. #17) is denied.

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 12(a)(4)(A), defendant RPM Mortgage, Inc., shall file its responsive pleading not later than **May 5, 2010.**

*/s/ Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this _21st_ day of April, 2010.